HARRY ERTISCHEK, Appellant, *v.* NEW HAMPSHIRE FIRE INSURANCE COMPANY OF MANCHESTER, a Foreign Corporation, Respondent.

(Supreme Court, Appellate Term, First Department, January, 1917.)

Insurance (fire)— policy of — actions — evidence — usage and custom — when judgment reversed.

It is well settled that where it is shown that the use of an article, prohibited in the printed part of a policy of fire insurance, is necessary in the prosecution of the business in which the insured was engaged, the business being specified or made reasonably clear in the written portion of the policy, it will be deemed to be a legitimate part of the stock insured, and its use will not preclude a recovery on the policy.

Upon the trial of an action upon a policy of insurance on a stock of merchandise consisting of " laces, trimmings and embroideries, including boxes, packages, samples, labels and supplies," contained in a certain building, the policy declaring it void if benzine were kept, used or allowed on the premises, notwithstanding any usage of the trade to the contrary, it was conceded that plaintiff kept upon the premises, for dyeing laces, a small quantity of dye stuffs in which benzine was an ingredient. *Held,* that evidence tending to show that it was the general usage and custom of the trade

to use and have on hand a benzine dye stuff for dyeing laces was clearly competent, as, if believed, it would have established that such dye stuff was one of the " supplies " within the meaning of the policy, and the exclusion of such testimony was error.

Where the court excluded the testimony offered and dismissed the complaint on the ground that the keeping and using of dye stuffs in which benzine was an ingredient was tantamount to keeping " benzine " within the meaning of the policy, a judgment entered in accordance with such holding will be reversed and a new trial ordered.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, first district, dismissing the complaint.

Goldstein & Goldstein (David Goldstein of counsel), for appellant.

Engelhard, Pollak, Pitcher & Sterm (Frederic C. Pitcher, of counsel), for respondent.

SHEARN, J.   This is an action upon a policy of fire insurance.  Plaintiff was engaged in the business of buying and selling laces and trimmings at wholesale and retail, which business he carried on at 95 Orchard street, the premises being owned by him.  He was insured for $400 " On stock of merchandise consisting principally of Laces, Trimmings and Embroideries, including boxes, packages, samples, labels and supplies " contained in said building.  The words " Laces, Trimmings and Embroideries " were typewritten, and the other words quoted were printed.  The policy was in the standard form, and contained a provision that the policy shall be void " If (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, benzine," etc.  Upon the trial, plaintiff's

counsel conceded that the plaintiff kept upon the premises for use in the business, namely, for dyeing laces, a small quantity of dye stuffs in which benzine was an ingredient.  Plaintiff testified that he used benzine in making the dye stuffs; that " If a lady comes in and wants green or pink or yellow, we make it while she waits;" that " we spill it into a certain bile and mix it up with the color I wanted." He also testified: " Q. Did you keep any benzine separate from the dye? A. No, positively not." The court .did not base its decision dismissing the complaint upon the ground that plaintiff had kept pure benzine, but held that the keeping and using of dye stuffs in which benzine was an ingredient was tantamount to keeping benzine. This would not be sound as a general proposition. But it may be assumed for the purpose of this decision that a dye stuff consisting merely of the mixture of a color ingredient with benzine was in fact and within the meaning of the policy " benzine." The plaintiff attempted to prove that it was the custom and usage in the trade in which plaintiff was engaged to keep " such dye stuffs," the purpose being to establish that it was customary and necessary in the plaintiff's line of business to use and to have on hand for such use a benzine dye stuff for dyeing the laces in which the plaintiff dealt. This testimony was rejected and the decision turns upon the validity of this ruling. The evidence should have been received, because, if. believed, it would have established that such dye stuff was one of the " supplies " referred to in the description of the property insured. It is well settled that where it is shown that the use of an article, prohibited in the printed body of a policy, is necessary in the prosecution of the business in which the insured was engaged, the business being specified or made reasonably clear in the written portion of the policy, it will

be deemed to be a legitimate part of the stock insured and the use of the prohibited article will not avoid a recovery upon the policy. *Gropper* v. *Home. Ins. Co.*, 77 Misc. Rep. 132; *Hall* v. *Insurance Co. of North America*, 58 N. Y. 292, 294. Respondent contends that, under the doctrine of *ejusdem generis*, in a policy of insurance " on stock of merchandise consisting principally of laces, trimmings and embroideries, including boxes, packages, samples, labels and supplies, " it is obvious that the word " supplies " when used in conjunction with these other articles did not include such a highly inflammable material as benzine or a dye stuff in which benzine was the principal ingredient. This is far from clear as a matter of law and the proffered proof would have shown the contrary as a matter of fact. It is true that one would not infer from the words quoted that dye stuffs were a part of the stock of goods that plaintiff was in the business of buying and selling. But neither would it be inferred, nor was it a fact, that plaintiff was in the business of buying and selling " boxes," " packages," " samples," or " labels," yet all of these were necessarily used in connection with buying and selling the merchandise insured and clearly were within the policy. How can it be said as a matter of law that the " supplies " necessarily used in said business did not include dye stuffs in the face of the proffered proof that this was one of the supplies necessarily kept on hand and used in the business? The proof offered would have shown that it was not only customary for plaintiff to use dye stuffs as one of his supplies but that it was the general usage and custom of the trade so to do. " It is an elementary rule that underwriters are to be assumed to know the usual course of conducting business in connection with which they issue policies." *Hall* v. *Ins. Co., supra.* It was held in *Gropper* v. *Home Ins. Co., supra*, that:

"Since it does not clearly appear from the instrument exactly what the parties intended by the use of the words ' stock of a merchant tailor,' the plaintiff had a right to offer testimony tending to show the understanding of the parties in .regard to the meaning .of those words, and the exclusion of testimony offered for this purpose presents reversible error." I should be inclined to think that the words " Supplies " as used here did include a small quantity of dye stuff or benzine necessarily used in this business, but at any rate, if the use of the word is ambiguous or not free from doubt, testimony of the custom and usage of the trade tending to show the understanding of the parties in regard to the meaning of the word was clearly competent.

Respondent seeks to distinguish the *Gropper* case and the *Hall* case from the case under consideration. In the *Gropper* case the written portion of the policy covered " stock of merchandise, principally of stock of a merchant tailor." It was held that the plaintiff was entitled to show that a small amount of benzine for business purposes was a part of the " stock of a merchant tailor." In the *Hall* case the written portion of the policy covered " their stock as photographers, including engravings and materials used in their business." In holding that the plaintiff could recover, the court said: " Hence, when a policy is issued upon the stock of goods in a specified business the underwriter is presumed to know what goods are usually kept by those engaged in that business." Now it is quite true that the written portion of the policy in this case does not in terms cover " the stock of a wholesale and retail dealer in laces, trimmings and embroideries " and that it does not specify that the business of the insured was that of a wholesale and retail dealer in laces, trimmings and embroideries. To that extent

the cases may be distinguished. Here we have the stock of merchandise specified instead of the business, and it must be admitted that a decision that evidence was admissible to show what stock was ordinarily included in a specified business would not necessarily be decisive of the question whether evidence was admissible to show that other merchandise than the stock of merchandise specified was necessarily included or intended to be included in the stock insured. But this distinction is entirely inapplicable to the question whether proof is admissible to show the meaning of the word " supplies " actually used in the policy. Further, the principle of these cases supports the admissibility of the testimony irrespective of the use of the word " supplies," for while the policy itself did not describe in terms the business of the insured to be that of a wholesale and retail dealer in laces, trimmings and embroideries, the proof shows that that was the insured's business and the policy insures the plaintiff's stock of merchandise in the building where he carried on his business. If the policy had in terms insured the stock of merchandise in plaintiff's business of wholesale and retail dealer in laces, trimmings and embroideries, it is undisputed that proof would be admissible to show what according to the custom and usage of the trade was included in such a stock of merchandise. The mere fact that the stock of merchandise was generally described in the policy as consisting " principally of Laces, Trimmings and Embroideries " ought not to exclude this proof when it is a conceded fact in the case that the business carried on by the plaintiff at the premises in question was that of a wholesale and retail dealer in laces, trimmings and embroideries. In other words, where the business of the plaintiff was known, the words used were not intended to exclude any merchandise which

according to the custom and usage of the trade were ordinarily a part of the stock of merchandise of such a wholesale and retail dealer but were merely descriptive and intended to include his entire stock. Finally, there is a further rule that would make this evidence admissible, according to the case of *Norwaysz* v. *Thuringia Ins. Co.*, 204 Ill. 334, quoted with approval by this court in the case of *Gropper* v. *Home Ins. Co.*, *supra.* In that case the court said: " There are two general classes of cases in which it has been held with considerable uniformity that a breach of a prohibitive clause in a policy, such as this, will not operate to relieve the insurer from liability thereon. One, where the policy of insurance, being on a stock of goods used in business, contains clauses forbidding the keeping of certain materials which are customarily a part of such a stock of goods; the other, where the breach consists in keeping small quantities of the forbidden article for cleaning clothes or oiling machinery, or like purposes.'' In this case, the use by the plaintiff of a small quantity of benzine for dyeing the laces, etc., dealt in would be quite akin to the use by a merchant tailor of a small quantity of the forbidden article for cleaning his stock of clothes.

The effect of the clause " any usage or custom of trade or manufacture to the contrary '' was disposed of in the *Gropper* case.

Upon all these grounds, therefore, the court erred in rejecting the proffered testimony, and the judgment is reversed and a new trial ordered, with thirty dollars costs to appellant to abide the event.

GUY and BIJUR, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.